**Opinion issued December 15, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00018-CR

———————————

**JOHN ROBERT COULTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 12-DCR-061834**

# O P I N I O N

A jury convicted appellant, John Robert Coulter, of aggravated sexual assault of a child, and the trial court assessed punishment at 35 years' confinement. In this appeal, we consider whether the trial court abused its discretion by denying

appellant a new trial based on an allegedly lost or destroyed reporter's record.  We affirm.

## BACKGROUND

### *The Trial*

Appellant was charged with the aggravated sexual assault of a three-year-old child.  His case was called to trial on December 9, 2014.  At trial, the State filed a motion requesting that the child, who was five years old by the time of trial, be allowed to testify via closed-circuit television.  After a hearing regarding the effect that testifying before appellant would have on the child, the trial court granted the State's motion.

Terry Keenright of the Fort Bend County Information/Technology Department set up the closed-circuit television for the child's testimony.  The system provided a video and audio feed from a remote courtroom to the main courtroom.  The feed from the remote courtroom to the main courtroom was not recorded, nor did appellant or either of his attorneys request that it be recorded.  Instead, the court proceedings were stenographically transcribed by the court reporter, as in any other case.

The child was taken downstairs to the remote courtroom, accompanied by both prosecutors in the case, primary defense counsel James Bennett, defense

expert Dr. Jerome Brown, the child's advocate from the Child Advocacy Center, the court reporter, the bailiff, and the trial judge.

Appellant, his secondary defense counsel Michael Nassif, and the jury remained in the main courtroom upstairs. Nassif had the ability to text Bennett in the remote courtroom if he had any questions, but he did not recall doing so. Bennett and Nassif also had the opportunity to confer before the child's testimony was concluded; neither raised any objection to the manner in which the child's remote testimony was taken.

Thereafter, the child testified, and her testimony was stenographically recorded by the court reporter, who was in the remote courtroom with the child. Although the child expressed dislike for appellant, her testimony did not actually address the event for which appellant was charged.

The jury convicted appellant, the trial court assessed punishment at 35 years' confinement, and appellant timely appealed.

### *The Appeal and Abatement*

Appellant filed a motion in this Court alleging that the "child was videotaped for some extended period of time before she testified, and the Jury could see her demeanor and playing with her dolls. Apparently one or more of the Jurors may have even become emotional at seeing this witness, even before the first question was asked." Appellant asserted that he had attempted to view this

alleged videotape of the child, but that the videotape had not been located. Appellant, alleging that the videotape was missing from the record, requested that this Court "order the Court Reporter to make this video available to Defendant's Counsel, and also to the State's Appellate Counsel."

On January 5, 2016, this Court abated the appeal and ordered the trial court to hold a hearing regarding the purported missing videotape. Accordingly, the trial court held an abatement hearing, at which the prosecutor Jill Stotts, the court reporter Karen Woolsey, and defense attorneys Michael Nassif and James Bennett testified. At the hearing, it was determined, and the parties now agree, that no videotape was made of the closed-circuit feed from the remote courtroom to the courtroom in which appellant and the jury sat. The trial court also found, and again the parties agree, that neither appellant nor either of his defense attorneys requested that a videotape be made or objected to the lack of such a videotape recording. However, the court reporter, Woolsey, testified that she had located an audiotape that she made as a back-up work aid for her stenography. The parties agree that the audiotape starts less than two minutes before the testimony that was transcribed in the official reporter's record and one minute before the jury entered the courtroom. No testimony, other than that already included in the official

4

reporter's record, is heard on the audiotape, but the prosecutor can be heard talking to the child witness, though some of what she says is inaudible.[1]

***The Trial Court's Findings and Recommendations on Abatement***

The issues this Court ordered the trial court to address at the abatement hearing, with the trial court's responses in italics, are as follows:

The trial court is directed to:

> (1) Determine whether the child witness was observed by the jury before direct examination began and whether this portion was stenographically or otherwise recorded or whether the presence of the court reporter was either waived or otherwise not requested by the appellant;
>
> *Based on the backup audio recording, the court reporter turned on her recording device about one minute before the jury began walking into the courtroom.*
>
> *Based on the backup audio recording, about one minute and twenty second elapsed, during which the jurors walked into the courtroom and were seated and the judge made opening remarks, before questioning of the child complainant on direct examination began.*
>
> *Any observations of the child that could have occurred before direct examination was incidental to her presence on the stand during the trial court's remarks immediately prior to her testimony.*

---

[1] For the benefit of this Court, the court reporter has transcribed this portion of the audiotape and included it as an exhibit to the abatement hearing. It includes only 2 ½ pages of reporter's record, and, as noted above, some of what is said by those in the remote courtroom is described as inaudible.

*Appellant, represented by his second attorney, Michael Nassif, was present in the courtroom with the jury.*

*Appellant did not request a record, stenographic or otherwise, of the child complainant.*

a.  If the child witness was observed by the jury before direct examination and it was recorded, determine whether the court reporter is able to prepare, certify, and file a transcription of this proceeding;

*On October, 22, 2015, the court reporter filed with the First Court of Appeals a transcription of the backup audio recording which started one minute before the jury began walking into the 434th District Courtroom after a recess. The court reporter also filed a digital file of her backup audio recording.*

b.  If the child witness was observed by the jury before direct examination but not recorded, determine why it was not recorded;

*Article 38.071, Section 3, does not require the televised testimony of a child via closed circuit equipment to be recorded.*

*Based on the credible affidavit of [the prosecutor] Ms. Stotts and this Court's recollection, the intention was to have the court reporter take the child witness's testimony as any other witness.*

*Appellant and his two attorneys did not request the child's televised testimony to be audio or visually recorded.*

(2) Determine whether any testimony was given by the child witness before direct examination;

*No testimony was given by the child witness before direct examination.*

*Any comments to the child by the prosecutor prior to the child's testimony that could have been heard by the jury were instructions on sitting still.*

(3) If testimony was given by the child witness before direct examination, determine whether the testimony was stenographically or otherwise recorded and whether the court reporter is able to prepare, certify, and file a transcription of the testimony;

*Not applicable*

(4) Determine whether any other testimony, argument, or proceedings from the trial of this cause have been omitted from the reporter's record filed with this Court on May 4, 2015;

*There is no evidence that any testimony, argument, or other proceeding in the trial of this case was omitted from the reporter's record.*

(5) If other testimony, argument, or proceedings from the trial of this cause have been omitted from the reporter's record on file with this Court, determine whether the testimony, argument, or proceedings was or were stenographically or otherwise recorded and whether the court reporter is able to prepare, certify, and file a transcription of the testimony, argument, or proceedings;

*Not applicable.*

(6) If any portion of the trial proceedings has been omitted from the reporter's record on file with this Court but can be prepared, certified, and filed by the court reporter, order the court reporter to prepare,

7

certify and file a supplemental reporter's record containing the missing portions of the trial proceedings, and provide a deadline for filing the supplemental record of no later than 30 days from the date of the abatement hearing in the trial court;

*Not applicable.*

(7) If any portion of the trial proceedings has been omitted from the reporter's record on file with this Court and cannot be prepared, certified, and filed in a supplemental reporter's record, determine:

*Not Applicable.*

a. Whether the lost or destroyed portion of the reporter's record is necessary to the appeal's resolution; and

*Not applicable.*

b. Whether the lost or destroyed portion of the reporter's record can be replaced by agreement of the parties;

*Not applicable.*

(8) make any other findings and recommendations the trial court deems appropriate; and enter written findings of fact, conclusions of law, and recommendations as to these issues, separate and apart from any docket sheet notations.

[The trial court made an additional 36 findings and recommendations].

Based on these findings and recommendations by the trial court, this Court, on January 5, 2016, concluded that the appellate record was complete and ordered the

appeal reinstated.

## NEW TRIAL BECAUSE OF INCOMPLETE RECORD?

In his sole issue on appeal, appellant contends that he should be granted a new trial because the official record is incomplete in that "new testimony from the Child's time on the stand was produced at [the abatement] hearing," and that "an audio-record [from] the Court Reporter was produced at [the abatement] hearing which shows that the Prosecutor was whispering and coaching the Child Witness while she was on the witness stand during the trial." Specifically, appellant contends that this audio recording belonging to the Court Reporter should have been transcribed and included as a part of the appellate record in this case. Appellant also seems to complain that no videotape was made of the Child's closed-circuit testimony. We will address each of appellant's contentions on appeal.

### *Standard of Review and Applicable Law*

Rule of Appellate Procedure 34.6(f) provides:

An appellant is entitled to a new trial under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or—if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4) if the lost, destroyed, or inaudible portion of the reporter's record cannot be replaced by agreement of the parties . . . [.]

TEX. R. APP. P. 34.6(f).

An incomplete appellate record does not result in an automatic reversal under the appellate rules. *See Issac v. State*, 989 S.W.2d 754, 756 (Tex. Crim. App. 1999). Instead, a harm analysis is required when considering a missing or incomplete reporter's record. *Id.* at 757. The provision in Rule 34.6 requiring an appellant to show that the missing portion of the record is necessary to his appeal is essentially a requirement that the appellate court perform a harm analysis. *Nava v. State*, 415 S.W.3d 289, 306 (Tex. Crim. App. 2013) (citing *Routier v. State*, 112 S.W.3d 554, 571 (Tex. Crim. App. 2003)). If the missing portion of the record is not necessary to the appeal's resolution, then the loss of that portion of the record is harmless and a new trial is not required. *Routier*, 112 S.W.3d at 571–72; *Issac*, 989 S.W.2d at 757.

We review a trial court's findings of fact for an abuse of discretion, while we review de novo its conclusions of law. *See*, *e.g.*, *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

### *No Videotape Required by Article 38.071, § 3*

We first address appellant's argument that the trial court was required to, sua sponte, videotape the closed-circuit feed of the child's testimony from the remote courtroom to the courtroom in which the jury sat. Appellant argues that "the Record is not complete without this Video that was not made." Thus, we must determine whether the applicable statute requires that a videotape be made when utilizing closed-circuit testimony by a child.

Article 38.071, § 3 of the Code of Criminal Procedure provides:

(a) On its own motion or on the motion of the attorney representing the state or the attorney representing the defendant, the court may order that the testimony of the child be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court and the finder of fact. To the extent practicable, only the judge, the court reporter, the attorneys for the defendant and for the state, persons necessary to operate the equipment, and any person whose presence would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. Only the attorneys and the judge may question the child. To the extent practicable, the persons necessary to operate the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony, but does not permit the child to see or hear them. The court shall permit the defendant to observe and hear the testimony of the child and to communicate contemporaneously with his attorney during periods of recess or by audio contact, but the court shall attempt to ensure that the child cannot hear or see the defendant. The court shall permit the attorney for the defendant adequate opportunity to confer with the defendant during cross-examination of the child. On application of the attorney for the defendant, the court may recess the proceeding before or during cross-examination of the child for a

11

reasonable time to allow the attorney for the defendant to confer with the defendant.

(b) The court may set any other conditions and limitations on the taking of the testimony that it finds just and appropriate, taking into consideration the interests of the child, the rights of the defendant, and any other relevant factors.

TEX. CODE CRIM. P. ANN. art. 38.071, § 3 (West. Supp. 2016).

Appellant points to no authority, and we can find none in case law or in the statute above, requiring the trial court to create a videotaped copy of the feed from the remote courtroom. Indeed, article 38.071, while detailing how the room in which the child testifies shall be set up, does not mention the need to videotape the testimony. Instead, by requiring the court reporter to be present in the room with the child, the statute implicitly suggests that the testimony will be recorded stenographically, as is done with all other witnesses.

We are not suggesting the trial judge cannot order that such a videotape be created if he finds it "just and appropriate" under subsection (b) of the statute. However, there is no compulsion that he do so, especially absent a timely request by appellant.

Likewise, because it would not have been an abuse of discretion for the trial judge to deny a request to videotape the child's testimony because it is not required by the statute, appellant's counsel was not ineffective for failing to request the trial court to do so in this case. Further, appellant's counsel cannot show that the result

12

of the case would have been different had he done so. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984).

***Transcription of "Missing" Portions of Court Reporter's Backup Audiotape***

Appellant also argues that "[t]he Record in this case, despite findings of fact and conclusions of law by the Trial Court, was incomplete since new testimony from the child's time on the stand was produced at [the abatement] hearing." Appellant further argues that the court reporter's back-up CD was produced at the abatement hearing and "shows the Prosecutor was whispering and coaching the Child Witness while she was on the witness stand during Trial," and that this CD should be a part of the record in this case, but "was never transcribed to writing to [defense counsel's] knowledge, but exists."

However, the record from the abatement hearing includes not only the court reporter's back-up CD, but also an exhibit containing a written transcription of the audio picked up by the court reporter's audio equipment before and during the jury's entrance into the courtroom, but before trial proceedings and stenographic recording resumed. As found by the trial court in his findings of fact and conclusions of law at the abatement hearing, "no testimony was given by the child witness before direct examination."

Even if we were to agree with appellant that the audio captured before the jury entered the courtroom and the court reporter began her stenographic

transcription was a part of the appellate record, we would nonetheless conclude that it was not a "significant portion" of the record, as required by TEX. R. APP. 34.6(f)(2).

In the transcript of this one minute of courtroom activity, the prosecutor can be heard telling the child witness, "Okay. Okay. I'm going to sit right here, okay?" and "You're such a big girl in that chair; you're doing good." In another place, the prosecutor says to the child, "[i]f you could go down just like that. Perfect." In some spots, the court reporter merely noted that the prosecutor was "(whispering to witness)" or "(talking softly to witness)." These portions of the audiotape are consistent with the prosecutor's testimony at the abatement hearing that the child had been upset, so she sat next to the child and talked her prior to the jury entering the courtroom. The prosecutor testified as follows:

> My recollection of what happened when [the jury] came in is that we were notified in the [remote] courtroom that the jury was coming in. Everybody got quiet just like we would if we were upstairs in the courtroom. I remember sitting next to the child and she had been previously kind of spinning in her chair and so I was telling her either to sit still or to be quiet. I can't remember which of those words I used. And that—you know just comforting her basically quietly while everybody was getting set up upstairs.

These private discussions between the prosecutor and the witness before and as the jury was entering the courtroom—if a part of the record at all—was not a "significant portion of the court reporter's notes and records." *See* TEX. R. APP. 34.6(f)(2). No testimony was given by the witness, and from the context of the

14

audible portions of the court reporter's back-up tape, it is clear that the prosecutor was reassuring her child witness about her upcoming testimony and telling her how to sit in her chair so that she could be seen by the video equipment. Indeed, the trial court found that "[a]ny comments to the child by the prosecutor prior to the child's testimony that could have been heard by the jury were instructions on sitting still."

Appellant also fails to show how the "missing or inaudible" one minute of material on the court reporter's back-up tape is "necessary to the appeal's resolution." *See* TEX. R. APP. P. 34.6(f)(3).

Appellant argues that he was harmed because "[a]ny juror, especially ones with young children or grandchildren would likely be affected by the undue delay prior to testimony to reflect on her silence and appearance, possible agitation, spoken words to her not included and transcribed in the official Record by the Prosecutor or others, and efforts by the representative of the State or others to calm her or otherwise engage her not on the Record."

As such, appellant's harm analysis speculates that the jury may have seen the child on the stand—and the prosecutor's off the record discussions with her— as it entered the courtroom. Appellant further speculates that the jurors "would likely" be affected if indeed they saw the child before she began her testimony.

However, in its findings of fact and conclusions of law, the trial court noted that "the screen is behind the jurors as they enter the courtroom, and once they are seated, the screen is perpendicular to their straight line of vision[,]" and "[t]o see the screen, the jurors must turn their heads sideways." The trial court further found that "[a]ny observations of the child that could have occurred before direct examination was incidental to her presence on the stand during the trial court's remarks immediately prior to her testimony." These findings by the trial court are supported by the record from the abatement hearing.

We hold that appellant has not shown how he has been harmed—either by the absence of the moments of activity that occurred just prior to the jury's entrance from the reporter's official record, or by the child's presence on the stand as the jury entered. Based on the record from the abatement hearing, it is unlikely that the jury was able to see the child on the screen as they entered because the screen was behind them, and, even if they did see the child and the prosecutor talking to her, it is unlikely that her presence on the video screen for such a short amount of time was more damaging than her testimony itself.

For these reasons, we overrule appellant's sole point of error on appeal.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

Publish. TEX. R. APP. P. 47.2(b).