**Affirmed and Opinion filed July 26, 2018.**



In The

# Fourteenth Court of Appeals

NO. 14-15-01066-CR
NO. 14-15-01067-CR
NO. 14-15-01068-CR

## DYLAN ANDREW QUICK, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1383658, 1383659, 1383660**

# O P I N I O N

Appellant Dylan Andrew Quick challenges the sentences imposed by the trial court after appellant pled "guilty" to two indictments charging him with aggravated assault with a deadly weapon and one indictment charging him with attempted capital murder, without a recommendation or agreement with the State. Appellant asserts he is entitled to have his sentences vacated and to a new punishment hearing because (1) due to lost exhibits admitted at the punishment

hearing appellant should be granted a new trial under Texas Rule of Appellate Procedure 34.6(f); (2) the trial court erred in denying appellant's motion for new trial based on newly-discovered evidence or based on an allegedly impermissible argument by the State; (3) the record does not support the trial court's stated reasons for the sentences; and (4) appellant's sentences violate state and federal constitutional protections against cruel and unusual punishment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was a student at Lone Star College. On the date of the offenses, appellant's mother dropped him off at the campus before his scheduled class. Appellant brought with him an Exacto knife[1] and other sharp implements. Instead of attending his scheduled class, appellant walked around campus. According to appellant's counsel, appellant walked to try to quell his compulsive thoughts about harming others. Any such attempt proved unsuccessful.

After walking around campus for awhile, appellant began approaching students at random and stabbing them with the Exacto knife. During the punishment hearing, some students who were stabbed testified that they did not understand what was happening. They saw appellant approaching them with the Exacto knife, which some thought might be a marker, and then quickly gashing them. As the students began to realize what was happening, some ran away and sought cover in different classrooms. Some tended to their injured classmates. Others confronted appellant and successfully restrained him until he could be taken into custody.

Appellant wounded sixteen students who suffered varying degrees of injury. No students died, but four received serious wounds requiring emergency transport

---

[1] In the record this type of knife is referred to as an "Exacto knife," so we use this spelling in the opinion, even though the correct spelling may be "X-Acto knife."

2

to a hospital by helicopter. Appellant stabbed several of the students at the base of the neck. One student witnessed appellant cutting students by taking the knife and slashing in a downward direction in the area where the neck meets the skull.

*Appellant's Confession and Plea*

Appellant confessed to the stabbings. When police investigated appellant's belongings, they found a document in which appellant spoke of his desire to kill. In two indictments, appellant was charged with the offense of aggravated assault with a deadly weapon. In one indictment appellant was charged with attempted capital murder as to two complainants. Appellant pleaded "guilty" to each indictment without a recommendation or agreement with the State. Appellant requested probation and elected to have the trial court assess punishment.

*Punishment Hearing*

At the punishment hearing for all of the offenses, the State presented evidence by letter and through live testimony that many of the people appellant injured still had injuries that affected their daily lives. Many had scars. Several students described continued psychological trauma as a result of the incident. One complainant testified about the way that the event continues to affect not only her but also her children.

Appellant presented evidence that he was deaf, but in spite of his disability, appellant was an active and productive member of the community. Appellant presented the testimony of a pastor who discussed appellant's involvement in church and the efforts appellant's parents made to nurture him. The librarian at Lone Star College testified that appellant had been involved in her programs since his youth and that she had featured him in an article she wrote because appellant was an excellent student. Many individuals who had interacted with appellant and

appellant's family sent letters in which they expressed their shock at appellant's actions and their belief that appellant could be rehabilitated.

In addition to evidence about appellant's deafness, involvement in the community, and youth at the time of the offenses (age 20), appellant presented evidence that he had been suffering from obsessive-compulsive disorder ("OCD") and anxiety disorder, but that he had not been receiving treatment.[2] After appellant arrived at the Harris County Jail, psychiatrists evaluated appellant and diagnosed him with OCD and anxiety disorder. Appellant began receiving treatment for these mental illnesses. After receiving medication, appellant participated in individual and group therapy. During this time appellant was a model prisoner and dramatically improved his wellbeing. The trial court found appellant competent to stand trial.

Appellant had no criminal record, no history of violence, and no drug or alcohol use. Appellant presented evidence that his OCD required him to engage in compulsive behaviors to compensate for intrusive thoughts, but that his treatment had improved his symptoms. In particular, forensic psychiatrist Dr. Matthew Faubion testified that appellant was responding well to medication and that appropriate treatment of appellant's obsessive thoughts would diminish any type of violence in the future.

*Appellant's Punishment*

The trial court assessed punishment at 20 years' confinement for each aggravated-assault offense and 48 years' confinement for the attempted-capital-murder offense, with the sentences to run concurrently. The trial court made a

---

[2] Many years earlier, appellant had been prescribed medication for depression, but appellant stopped taking it after experiencing an adverse reaction and had not received treatment for OCD or anxiety disorder.

finding that appellant used a deadly weapon in each case.

*Appellant's Motion for New Trial*

Appellant filed a motion for new trial in which he asserted several arguments in support of a new trial including (1) appellant's sentences are disproportionally severe punishments and violate the Eighth Amendment's prohibition against cruel and unusual punishment, (2) the stabbing victims recognize that appellant needs mental health treatment and that 48 years' confinement is excessive, and (3) during closing argument at the punishment hearing, the prosecutor stated that "Harris County is watching" and gestured towards the many television cameras filming the proceedings, thus improperly referring to facts not in evidence, encouraging the trial court to neglect its duty to remain "neutral and detached," and arguing that some portion of the community expected a particular punishment. The trial court denied appellant's motion for new trial.

## II. ANALYSIS

**A. Is appellant entitled to a new trial because the court reporter lost certain exhibits admitted at the punishment hearing?**

Under his first issue, appellant asserts that this court should remand the case to the trial court for a new trial on punishment because the trial court abused its discretion in determining that the record filed on appeal is an adequate substitute for the portions of the punishment-hearing record that the court reporter lost.

*1. Exhibits Admitted at the Punishment Hearing*

At the punishment hearing, the State offered the following exhibits:

- Exhibit 100: the State's sentencing memorandum
- Exhibit 1: a map of the school

5

- Exhibit 2: a diagram of the school

- Exhibit 5 (exhibit previously admitted as part of Exhibit 100): a photograph of a student at Lone Star College; the photograph depicts the student's injury.

- Exhibit 6: a photograph of Karissa Harris, one of the complainants, after her wounds had been "cleaned up"

- Exhibit 7: another photograph of Harris after her wounds had been "cleaned up"

- Exhibit 8: a photograph of Harris that depicts the state of her injury after six weeks of healing.

- Exhibit 11 (exhibit previously admitted as part of Exhibit 100): a photograph of a man

- Exhibit 20 (exhibit previously admitted as part of Exhibit 100): apparently a photograph of items appellant had in his possession

The trial court admitted into evidence appellant's Exhibits 1 through 75, which constituted appellant's sentencing memorandum and supporting exhibits. Appellant also filed a copy of these exhibits in the clerk's record. The trial court also admitted appellant's Exhibit 76 during the hearing. Exhibit 76 is a photograph.

## 2.   *First Hearing on Abatement*

While these appeals were pending, appellant filed a motion to abate the appeals to allow the trial court to conduct a hearing under Texas Rule of Appellate Procedure 34.6(f) because the record did not contain a copy of State's Exhibits 100, 1 and 7. *See* Tex. R. App. P. 34.6(f). This court abated the appeals for the trial court to conduct a hearing to determine: (1) whether appellant timely requested a reporter's record; (2) whether without the appellant's fault, significant exhibits have been lost or destroyed; (2) whether the lost exhibits are necessary to appellant's appeals; and (4) whether the parties can agree on replacement of the

6

missing exhibits with copies; or (5) if the trial court can determine with reasonable certainty that copies accurately duplicate the missing exhibits.

At the hearing following the abatement, the prosecutor testified that he was submitting State's Exhibit 100 as it was at the end of the punishment hearing. The prosecutor stated that during the punishment hearing, portions of the exhibit were removed and renumbered to "in an effort to try and clear up the record to make it understandable rather than referring to page numbers within a large document." The prosecutor offered and the trial court admitted into evidence State's Exhibit 200, which the prosecutor said was a recreation of State's Exhibit 100 before the prosecutor removed any documents during the punishment hearing. The prosecutor stated that Exhibit 200 was an exact recreation of the original exhibit, except that the prosecutor had not digitally saved the entire array of admitted photographs. The prosecutor testified that he had four photographs designated as Exhibits 210, 211, 212, and 213 that the prosecutor was offering in connection with Exhibit 200. The prosecutor knew that the trial court had admitted two of the photographs — either 210 or 211 and either 212 or 213. The prosecutor could not remember which photograph he had included in Exhibit 100, and so he made all four photographs part of Exhibit 200.

Appellant pointed out that State's Exhibit 7, a photograph of complainant Harris that depicts her injuries, was missing as well. The trial court adjourned the hearing. A few days later, when the trial court resumed the hearing, the prosecutor stated that he had been in touch with Harris and that she had confirmed that State's Exhibit 208 was the same photograph admitted as Exhibit 8 during the punishment hearing. The prosecutor offered State's Exhibits 206, 207, and 208 and the trial court admitted those exhibits into evidence. The prosecutor stated that Exhibit 208 was the photograph the complainant gave the prosecutor before the hearing and

7

that Exhibit 208 was the photograph that was admitted into evidence as Exhibit 8 at the punishment hearing. The prosecutor also said that Exhibits 206, 207, and 208 corresponded to Exhibits 6, 7, and 8 from the punishment hearing. The prosecutor offered and the trial court admitted a photograph that the State said was the same photograph that was Defendant's Exhibit 76 during the punishment hearing.

The trial court found that (1) appellant timely requested the reporter's record, (2) without the fault of appellant or the State, significant exhibits have been lost or destroyed, (3) the parties cannot agree on replacement of the missing exhibits, (4) the exhibits submitted during the abatement hearing accurately duplicate with reasonable certainty the exhibits admitted during the punishment hearing, and (5) the prosecutor's testimony at the abatement hearing is credible.

### 3. *Second Hearing on Abatement*

Appellant filed a second motion alleging inaccuracies in the record. This court directed the trial court to conduct a hearing under Texas Rule of Appellate Procedure 34.6(e)(2). Appellant and the prosecutor agreed to a list of corrections with respect to those inaccuracies, which the trial court admitted at the hearing.

### 4. *Standard Governing the Analysis*

We review a trial court's findings relating to a lost or destroyed record for an abuse of discretion. *Johnson v. State*, 524 S.W.3d 338, 343 (Tex. App.—Corpus Christi 2017, no pet.); *Coulter v. State*, 510 S.W.3d 210, 215 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Texas Rule of Appellate Procedure 34.6(f), entitled "Reporter's Record Lost or Destroyed," provides:

> (f) *Reporter's Record Lost or Destroyed*. An appellant is entitled to a new trial under the following circumstances:
> (1) if the appellant has timely requested a reporter's record;
> (2) if, without the appellant's fault, a significant exhibit or a

8

significant portion of the court reporter's notes and records has been lost or destroyed or—if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4) if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.

Tex. R. App. P. 34.6(f). Under Rule 34.6, we do not automatically reverse a conviction when the record is incomplete. *See id.*; *Routier v. State*, 112 S.W.3d 554, 571 (Tex. Crim. App. 2003). Instead, appellant is entitled to a new trial based on the court reporter losing exhibits only if (1) appellant timely requested a reporter's record, (2) was without fault as to the loss of a significant exhibit, (3) the lost exhibit is necessary to the appeal's resolution, (4) the lost exhibit cannot be replaced by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit. *See* Tex. R. App. P. 34.6(f); *Haynes v. Haynes*, No. 04-15-00107-CV, 2017 WL 2350970, at *3 (Tex. App.—San Antonio May 31, 2017, pet. denied) (mem. op.). Rule 34.6 contains an internal harm analysis governing an appellant's entitlement to a new trial. *See* Tex. R. App. P. 34.6(f)(3). Under Rule 34.6(f)(3), if the missing exhibits are not necessary to the appeal's resolution, then the loss of that portion of the record is considered harmless and appellant is not entitled to a new trial. *Nava v. State*, 415 S.W.3d 289, 306 (Tex. Crim. App. 2013).

The record shows that appellant timely requested a reporter's record and that without appellant's fault, a significant exhibit was lost or destroyed. The parties

9

could not agree on any replacement. Thus, we must determine whether the trial court abused its discretion in determining that the copies of the lost or destroyed exhibits admitted into evidence at the hearing during abatement accurately duplicate with reasonable certainty the original exhibits, and, if not, we must determine whether the missing exhibits are necessary to the appeals' resolution, such that appellant was harmed by the loss of that portion of the record. *See id.* Appellant argues that the State did not dispute the necessity of the exhibits to the appeals, but the record from the abatement hearing shows otherwise.

Even if the State did not dispute the necessity of the exhibits to the appeals, this court still would consider whether the exhibits are necessary to their resolution. *See Saldivar v. State*, 542 S.W.3d 43, 48 (Tex. App.—Houston [14th Dist.] 2017, pet. filed). Appellant asserts that the trial court found the exhibits are necessary to the appeals, but the record does not reflect that the trial court made this finding. Before deciding to adjourn the hearing, the trial judge indicated on the record that she thought the exhibits were necessary to the appeals, but instead of making findings, the trial judge adjourned the hearing and reconvened a few days later. The trial court's subsequent findings do not address necessity of the exhibits to the appeals.

## 5. *Accuracy of Duplicates*

Appellant asserts that the trial court erred when it found the exhibits submitted during the abatement hearing accurately duplicate with reasonable certainty the exhibits admitted during the punishment hearing because the prosecutor admitted that some were not duplicates and the prosecutor demonstrated a lack of knowledge about other portions of the exhibit. Appellant points to the prosecutor's inability to answer some of the trial judge's questions about an exhibit as a reason the trial court abused its discretion in determining that the exhibit was

10

an accurate duplicate. Appellant points to three exhibits and argues that because the record does not identify the contents of the exhibits with certainty, appellate counsel cannot craft arguments.

The record reveals that some of the duplicates offered by the prosecutor did not duplicate the original exhibit because the prosecutor could not determine exactly which photographs the original exhibit contained. The prosecutor offered the different possibilities. Photographs 210 and 211 show different angles of appellant's backpack on the day of the incident and the items found in the backpack. The prosecutor stated that only one of these two similar photographs were admitted into evidence, but he could not say which one. Photographs 212 and 213 show all of the items found in the backpack, laid out. In photograph 212 the items are not laid out as neatly as in photograph 213. The prosecutor explained that only one of these two photographs was admitted into evidence, but he could not identify which one. We presume for the sake of our analysis that the exhibits admitted during the abatement hearing did not accurately duplicate with reasonable certainty these two exhibits admitted during the punishment hearing.

Appellant asserts that the trial court's ruling does not address three exhibits — Exhibits 5, 11, and 20.[3] These three exhibits were part of State's Exhibit 100, though, so the trial court's ruling addresses these exhibits. We presume for the sake of our analysis that the exhibits submitted during the abatement hearing did not accurately duplicate with reasonable certainty Exhibits 5, 11, and 20.

With respect to all of the other exhibits, the trial court did not abuse its discretion in determining that the exhibits submitted during the abatement hearing accurately duplicate with reasonable certainty the exhibits admitted during the

---

[3] At times in the record, these exhibits are referred to as "demonstrative exhibits"; however the trial court admitted each exhibit into evidence as part of State's Exhibit 100.

11

punishment hearing.[4]  The prosecutor gave an explanation of how he recovered the exhibits.  By crediting the prosecutor's statement about how he obtained the duplicates, the trial court reasonably could have concluded that, except to the five documents discussed above, the exhibits submitted during the abatement hearing accurately duplicate with reasonable certainty the exhibits admitted during the punishment hearing.  *See* Tex. R. App. P. 34.6(f).  The prosecutor's information about his process for obtaining the duplicates was more important, in this case, than the prosecutor's detailed recollection of the exhibit itself.  The prosecutor may not have known the details of the exhibit when it was admitted at trial — or he may not have remembered those details months later — but Rule 34.6(f) does not entitle appellant to additional details about the substance of the exhibits, only a copy of the exhibits admitted at trial.  So, the fact that the prosecutor could not recall the name of the witness in the photograph does not matter as long as the trial court reasonably could have concluded that the exhibits submitted by the prosecutor at the abatement hearing accurately duplicate with reasonable certainty the original exhibits admitted at the punishment hearing.  Except as to the five documents discussed above, we conclude that the trial court did not abuse its discretion in determining that exhibits submitted by the prosecutor at the abatement hearing accurately duplicate with reasonable certainty the original exhibits admitted at the punishment hearing.  *See Haynes*, 2017 WL 2350970, at *3–4.

6.      *Whether Exhibits 5, 11, or 20 are necessary to the appeals' resolution*

On direct examination of Patrick Harrison during the punishment hearing, the prosecutor showed Harrison State's Exhibit 20, a photograph that the trial court already had admitted as part of State's Exhibit 100, without any objection from

---

[4] The remainder of this paragraph does not address the five punishment hearing exhibits discussed in the prior two paragraphs.

appellant. The prosecutor asked if anything in this photograph resembled the knife that Harrison saw in appellant's hand when appellant attacked Harrison. Harrison responded, "[t]he metal handle with one of these knives inserted into them. . . . Okay. This one with an arrow with one of these blades attached to the end of it. And he had it down on his hand to the right." Harrison identified a weapon depicted in State's Exhibit 20 that resembled the knife that Harrison saw in appellant's hand when appellant attacked Harrison. Appellant did not object to the admission of State's Exhibit 20 into evidence as part of State's Exhibit 100. Nor did appellant object to the State's question to Harrison about this exhibit or to Harrison's answer. Appellant suggests that this exhibit was a photograph of the contents of appellant's backpack and contends that the prosecutor was unable to identify which of several similar photographs was used as Exhibit 20. But, each of these similar photographs is in our appellate record, and if any of them raise a potential basis for reversing the trial court's judgment, appellant would be able to brief that issue on appeal. We conclude that State's Exhibit 20 is not necessary to the resolution of the appeals. *See Nava*, 415 S.W.3d at 306–08.

On direct examination of Helen Mata during the punishment hearing, the prosecutor showed Mata State's Exhibit 5, a photograph that the trial court already had admitted as part of State's Exhibit 100, without any objection from appellant. Mata testified that she is the person in the photograph and that "[i]t's a little hard to see." Mata testified that this photograph showed a cut at the base of her neck that appellant made. Mata stated that this photograph was taken after her wounds had been treated and that it showed the ten or eleven staples that she has due to a cut of "a few inches" on her neck. Mata also noted that State's Exhibit 5 shows a second cut lower down on her neck. Mata testified that appellant cut her as he ran past her in the hallway, and she described her injuries. Appellant did not object to the

13

admission of State's Exhibit 5, nor did he object to any of the prosecutor's questions regarding this exhibit or to Mata's testimony regarding this exhibit. We conclude that State's Exhibit 5 is not necessary to the resolution of the appeals. *See Nava*, 415 S.W.3d at 306–08; *Galvan v. State*, 988 S.W.2d 291, 298 (Tex. App.—Texarkana 1999, pet. ref'd).

On direct examination of Helen Mata during the punishment hearing, the prosecutor showed Mata State's Exhibit 11, a photograph that the trial court already had admitted as part of State's Exhibit 100, without any objection from appellant. The prosecutor asked Mata if the man in this photograph is the man she saw running away from appellant. Mata answered that she was not sure. No lawyer asked any other questions regarding this exhibit. Appellant did not object to the admission of State's Exhibit 11, nor did he object to the prosecutor's question or Mata's answer regarding this exhibit. We conclude that State's Exhibit 11 is not necessary to the resolution of the appeals. *See Nava*, 415 S.W.3d at 306–08; *Galvan*, 988 S.W.2d at 298.

## 7. *Photographs of Appellant's Belongings*

We now assess whether knowing which two of State's Exhibits 210, 211, 212, or 213 were admitted into evidence is necessary to the resolution of the appeals. In *Gavrel v. Rodriguez*, this court held in a civil case that the court could not review the record to determine whether the evidence was factually sufficient without having the complete record. *See* 225 S.W.3d 758, 763 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). But in *Gavrel*, the appellate court could not determine the substance of the missing portions of the record. *See id.* In *Gavrel*, the record contained large gaps in the expert's testimony. *See id.* Similarly, in *Bryant v. State*, this court reversed and remanded for a new trial under Rule 34.6(f) in a case in which large parts of the reporter's record from the trial

14

were missing. *See Bryant v. State*, 464 S.W.3d 99, 101–03 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Unlike in *Gavrel* and *Bryant*, in today's case, the trial court credited the prosecutor's representation that only one of each of the two pairs of similar photographs were admitted into evidence. Appellant did not object to the admission of these photographs during the punishment hearing. The differences between each pair of photographs are minimal. If any of these four photographs were to rise to reversible error, nothing would stop appellant from briefing such error on appeal. Yet, appellant has not briefed any appellate complaint based on any of these four photographs. We conclude that knowing which two of these four photographs was admitted during the punishment hearing is not necessary to the resolution of the appeals. *See Nava*, 415 S.W.3d at 306–08; *In Interest of S.V.*, No. 05-16-00519-CV, 2017 WL 3725981, at \*5 (Tex. App.—Dallas Aug. 30, 2017, pet. denied) (explaining that "we need not have a word-for-word transcription . . . to understand what these exhibits showed and the purpose for which they were offered) (mem. op.); *Galvan*, 988 S.W.2d at 298.

Appellant also argues that the record contains many typographical errors, but appellant and the State agreed about the proper corrections. Accordingly, these errors were fixed by the parties' agreement. *See* Tex. R. App. P. 34.6(f)(4); *Haynes*, 2017 WL 2350970, at \*3 (an error is a basis for a new trial only when the error cannot be fixed by the parties' agreement).

Having rejected all of appellant's arguments under his first issue, we conclude that appellant is not entitled to a new punishment hearing under Rule 34.6, and we overrule appellant's first issue.

15

**B.** **Is appellant entitled to a new trial on the basis of newly-discovered evidence?**

In his second issue, appellant asserts that the trial court abused its discretion in denying his motion for new trial because appellant discovered new evidence after the punishment hearing. In the motion for new trial, appellant stated that victims in this case believe appellant's sentence is excessive. Appellant attached affidavits of three people who did not testify at the punishment hearing. Two affiants stated that they did not know appellant was mentally ill. One of the affiants stated that she believed appellant should be in a mental-health facility rather than in jail. The second affiant believed the sentences were excessive and that appellant should receive long-term mental-health care. Appellant attached the affidavit of a student who witnessed the scene, had been in class with appellant, did not fear appellant, and had tried to speak with the prosecutor but her phone call had gone unreturned. Appellant also attached an affidavit of a licensed investigator. The affidavit stated that the investigator spoke to the three witnesses and none were aware of appellant's improvement as reported by the Harris County Jail Staff after appellant began receiving medication.

We review a trial court's decision regarding whether to grant a new trial based on newly discovered evidence for an abuse of discretion. *Keeter v. State*, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002). Texas Code of Criminal Procedure article 40.001, entitled "New Trial on Material Evidence," states that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." Tex. Code Crim. Proc. Ann. art. 40.001 (West 2018). Newly discovered evidence is "material" if:

> (1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative,

16

collateral, or impeaching; and, (4) the new evidence is probably true and will probably bring about a different result on another trial.

*Keeter*, 74 S.W.3d at 37.

Appellant did not address in the motion for new trial whether appellant's failure to discover or obtain the evidence was due to a lack of diligence. The newly discovered evidence comes from witnesses who did not testify at the punishment hearing, but appellant does not state that appellant did not know the witnesses existed. *See Garza v. State*, 425 S.W.3d 649, 652 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding trial court did not abuse discretion in denying new trial motion because evidence was potentially discoverable at the outset). Appellant does not state that he made any effort to contact the potential witnesses. *See Ho v. State*, 171 S.W.3d 295, 307 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding trial court did not abuse discretion in denying new trial when defendant did not contact a potential witness because defendant thought witness would not be helpful). Appellant asserts that the witnesses did not know appellant was mentally ill, but appellant does not explain his attempt to contact the witnesses and inform them about his mental illness, which was information available to appellant. *See State v. Arizmendi*, 519 S.W.3d 143, 150 (Tex. Crim. App. 2017). Because appellant did not show that his failure to discover or to obtain the evidence was not due to lack of diligence, the trial court did not abuse its discretion in denying appellant's motion for new trial. *See id.*; *Ho*, 171 S.W.3d at 307. We overrule appellant's second issue.

**C.     Did appellant preserve error on his complaint that the prosecutor made an impermissible closing argument?**

In his third issue, appellant asserts that the trial court abused its discretion in denying appellant's motion for new trial because the prosecutor violated appellant's rights to due process of law by making impermissible comments during

17

closing argument. During closing argument, the prosecutor stated to the trial judge, "Harris County is watching you, and I know you will do the right thing." Appellant did not object during closing argument. Instead, appellant filed a motion for new trial in which appellant requested a new trial on the basis of this allegedly impermissible argument.

We must determine whether appellant preserved error. Neither party has cited any cases outlining the requirements for preserving error on closing arguments in the context of a bench trial, and research has revealed no cases on this issue. The question of whether a party must object to closing argument in a bench trial to preserve error on appeal appears to be an issue of first impression.

To preserve error, the record must show that appellant made a timely request, objection, or motion and that the trial court ruled on it. Tex. R. App. P. 33.1(a)(1); *Garza v. State*, 126 S.W.3d 79, 82 (Tex. Crim. App. 2004). There are two main purposes behind this requirement: (1) to inform the trial court of the basis of the objection and give the court a chance to make a ruling on it, and (2) to give opposing counsel the chance to remove the objection or provide other testimony. *Id.*

In the context of jury argument, to preserve error on an objectionable statement, a defendant must object to the prosecutor's argument and obtain an adverse ruling. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Vasquez v. State*, 501 S.W.3d 691, 705 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In some contexts, courts have been more lenient regarding the timing of an objection in bench trials than in jury trials. In *Garza*, for example, a case involving a request to suppress evidence, the Court of Criminal Appeals noted that in bench trials, "the time at which a motion is re-urged or a ruling is obtained is not as crucial because the judge, as fact-finder, is aware of the substance of the motion

18

regardless of when the defendant finally argues it." *Garza*, 499 S.W.3d at 5.

But, the Court of Criminal Appeals has not been more lenient regarding the timing of objections in all cases. For example, in *Smith v. State*, a bench-trial case, the Court of Criminal Appeals concluded that, although a defendant had objected to the admission of evidence and the trial court had carried the objection with the case, the defendant did not preserve error when the trial judge admitted the evidence unaccompanied by a ruling on the complaint. 499 S.W.3d 1, 5 (Tex. Crim. App. 2016). *See also Flowers v. State*, 482 S.W.2d 268, 270 (Tex. Crim. App. 1972) (holding in bench trial that defendant did not preserve error on admission of evidence because objection was not specific enough).

Although in some circumstances, courts have found flexibility in preserving error in bench trials, they do so because the timing of the objection does not matter. The trial judge would have heard the evidence either way, and the objection occurred in a manner that allowed the trial court to make a ruling on the objection. In this case, though, because appellant did not object until the motion-for-new-trial stage, the trial court did not have the opportunity to make a ruling on the objection until after the trial court had issued its final judgment. In this posture, to sustain the objection, the trial court would have had to grant a new trial, which is a different remedy than the remedy available if appellant had objected to the comment during closing argument. We conclude that appellant's objection was not timely and appellant has not preserved error. *See Archie*, 221 S.W.3d at 699. We overrule appellant's third issue.

D. **Do appellant's sentences violate the Eighth Amendment prohibition against cruel and unusual punishment?**

In his fifth issue, appellant asserts that his 48-year and 20-year sentences amount to cruel and unusual punishment because they are grossly disproportionate

to the crimes compared to other sentences given in the same jurisdiction as well as to other sentences for the same offenses in different jurisdictions. Appellant argues that his culpability is diminished because of his disability, relative youth at the time of the crime, and mental illness. Appellant asserts that his sentences violate both the Eighth Amendment to the United States Constitution and Article One, Section Thirteen of the Texas Constitution. *See* U.S. Const. Amend. VIII; Tex. Const. art I, § 13.

*Did appellant preserve error on his state-law claim?*

To preserve an issue for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. *Penton v. State*, 489 S.W.3d 578, 580 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The appellate complaint must comport with the specific complaint the appellant timely lodged in the trial court. *Id.* The appellant must have conveyed to the trial court the particular complaint raised on appeal, including the precise and proper application of law as well as the underlying rationale. *Id.* A general or imprecise objection will not preserve error for appeal unless it is clear from the record that the legal basis of the objection was obvious to the court and opposing counsel. *Id.* Even constitutional errors may be waived by failure to timely complain in the trial court. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).

Appellant did not assert in the trial court that his punishment violated Article One, Section Thirteen of the Texas Constitution. Because appellant did not make this assertion in the trial court, appellant did not preserve error on his claim under the Texas Constitution. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Baldridge v. State*, 77 S.W.3d 890, 893 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

20

*Do appellant's sentences violate the Eighth Amendment?*

We review a trial court's ruling on a motion for new trial for abuse of discretion. *See Coyler v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). The Eighth Amendment, which the Fourteenth Amendment makes applicable to the states, proscribes sentences that are grossly disproportionate to the offense. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016); *Baldridge*, 77 S.W.3d at 893. But, this narrow principle does not require strict proportionality between the crime and the sentence. *Simpson*, 488 S.W.3d at 322. A sentence is grossly disproportionate if an objective comparison of the gravity of the offense against the severity of the sentence reveals the sentence to be extreme. *Robertson v. State*, 397 S.W.3d 774, 776 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Appellate courts should find sentences grossly disproportionate "only in the exceedingly rare or extreme case." *Simpson*, 488 S.W.3d at 322–23. Ordinarily, "a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." *Randall v. State*, 529 S.W.3d 566, 568 (Tex. App.—Houston [14th Dist.] 2017, no pet.). To determine whether a sentence for a term of years is grossly disproportionate, a court must judge the severity of the sentence in light of (1) the harm caused or threatened to the victims, (2) the culpability of the offender, and (3) the offender's prior adjudicated and unadjudicated offenses. *Id.* at 323. Legislatures have the broad authority to define their own crimes and set their own punishments. *Robertson*, 397 S.W.3d at 776 (quoting *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). Only in the rare case in which this threshold comparison leads to an inference of gross disproportionality will a court then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same

crime in other jurisdictions. *Randall*, 529 S.W.3d at 568.

Appellant's 48-year sentence for attempted capital murder falls well below the maximum punishment that could have been assessed. *See* Tex. Penal Code Ann. §§ 12.31, 12.32, 15.01(a), (d), 19.03(a)(7). Appellant's two 20-year sentences for aggravated assault, while the maximum amount of confinement allowed by statute, were also less than the maximum punishment because the trial court did not assess any fine. *See* Tex. Penal Code Ann. §§ 12.33, 22.02(a); *Jackson*, 680 S.W.2d at 814 (defendant's sentence was on higher end of the statutory range, but because it was still within the prescribed limits, it was not excessive).

Appellant argues that his age, deafness, and mental illness lessen his moral culpability, especially in light of his lack of criminal history. Appellant committed the offenses at age 20, which is older than the threshold designation of an adult. In *Mays v. State*, the Court of Criminal Appeals held that even if a mental illness contributed to the commission of a capital crime, the fact does not render one exempt from execution. *See* 318 S.W.3d 368, 379 (Tex. Crim. App. 2010). No expert in this case testified that appellant's mental illness caused appellant to commit the crimes. To the contrary, Dr. Faubion stated that he could not testify that what appellant did on April 9, 2013 was because of his OCD. Although appellant may have suffered from compulsive thoughts, the record did not contain any evidence that appellant did not understand his actions were wrong. The record contains evidence indicating that appellant wanted to kill people. The nature of appellant's assaults suggests appellant intended to kill those he injured.

Appellant pleaded "guilty" and confessed that on April 9, 2013, he intentionally, with the specific intent to commit the offense of attempted capital murder of Carl Babineaux and Carol Baca, did an act, to wit stabbing Carl

22

Babineaux and Carol Baca with a cutting instrument, which amounted to more than mere preparation that tended to but failed to effect the commission of the offense intended.

The State submitted a statement from Baca during the punishment hearing. Baca stated that appellant came toward her "really fast," that he thrust what looked like a small pocket knife at her neck, and that she did not know what had happened until she saw blood dripping down her arm. According to Baca, appellant did not hesitate; instead, he ran toward her, knowing exactly what he was doing. Baca said that, just before appellant stabbed her, she tried to move to the side, but appellant "tried even harder until he got a good jab at my neck." The doctors told Baca that she had a stab wound on the left side of her neck, a cut on her jugular vein, and a laryngeal-nerve injury causing vocal-cord paralysis. Baca endured two surgeries and underwent therapy for months. According to Baca, appellant's attack affected her family as much as it did her, and Baca still does not understand how appellant could attack her deliberately without hesitation. Baca stated she could not help but feel afraid and even paranoid at times. She also testified that she has difficulty feeling safe.

Medical records submitted during the punishment hearing show that Carl Babineaux sustained a stab wound in the middle of his neck as well as an injury to a thyroid artery and a penetrating injury to the left lobe of his thyroid gland. Babineaux underwent an operation, and a doctor was able to repair the thyroid injury.

Appellant also pleaded "guilty" and confessed that on April 9, 2013, he intentionally and knowingly caused bodily injury to Karissa Harris by stabbing her with a deadly weapon, and that appellant used and exhibited a deadly weapon, namely a cutting instrument.

23

Harris testified during the punishment hearing that appellant, a smiling man she had never seen before, ran up to her and "slashed [her] through her face." Then, he looked at her, came back, and stabbed her in her shoulder. Harris saw blood everywhere, and her wounds would not stop bleeding. Another student, Patrick Harrison, took Harris to the campus police office, but when they arrived no one was there. A janitor let Harris and Harrison into the office, and then Harrison left. According to Harris, at that point she "freaked out" because she was alone in the office with no one to protect her, and she really started having a panic attack.

Harris underwent emergency surgery on her shoulder. Medical records submitted during the punishment hearing showed that Harris suffered a stab wound to her left cheek and a stab wound to her left shoulder that opened her shoulder joint and caused injury to a tendon, her deltoid muscle, and the rotator cuff in her left shoulder. A plastic surgeon stitched up the wound on Harris's face.

Harris testified that appellant's attack on her affected her two children just as much as it affected her. Her oldest child was "really scared" and for "quite a[] while, she would never leave the house." Harris could not hide her injuries from her children because for over six weeks she had a large bandage on her shoulder. She had a "band-aid" on her facial wound for a few weeks until the stiches were removed, and her face was swollen. Harris endured physical therapy for six to eight weeks to help heal her shoulder. Harris still cannot lift her shoulder the way she could before the stabbing. Harris testified that the visible scars on her body are never going to go away.

Harris also testified about how the injuries impacted her daily life, physically, mentally, and emotionally. Just after the attack, her injuries prevented her from getting her youngest child in and out of the crib. When Harris is in big crowds or when a person runs up to her, she feels like she is going to have a panic

24

attack. Harris said that appellant's attack on her affected her, her children, her mother, her nieces, her nephews, and her whole family. Harris explained that all of this suffering as a result of a completely random attack made her feel angry. She does not understand why appellant hurt innocent people. Harris described appellant's demeanor in the midst of the stabbings as smiling and skipping around the hallways, as he attacked different people. According to Harris, appellant appeared to be enjoying what he was doing.

Appellant also pleaded "guilty" and confessed that on April 9, 2013, he intentionally and knowingly caused bodily injury to Michelle Alvarez by stabbing her with a deadly weapon, namely a knife.

Although appellant has no criminal history, his unprovoked violent attacks caused a great deal of harm. *See Solem*, 463 U.S. at 293 (considering the magnitude of the crime in determining whether sentence was cruel and unusual). *Torres v. State*, 92 S.W.3d 911, 921 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd) (evidence of the victim's physical or mental injury is highly relevant when considering the full magnitude of the crime). Appellant does not have any adjudicated or unadjudicated offenses prior to the date of these offenses.

Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the trial court as to the assessment of a particular punishment; rather, in applying the Eighth Amendment, the appellate court decides only whether the punishment under review falls within constitutional limits. *Solem*, 463 U.S. at 290; 103 S.Ct. at 3090. The trial court did not err in impliedly concluding that an objective comparison of the gravity of each offense against the severity of each sentence does not reveal any of the sentences to be extreme. *See Randall*, 529 S.W.3d at 569; *Robertson*, 397 S.W.3d at 776. Given the degree of harm appellant caused and threatened to the complainants, and appellant's

25

culpability, the trial court did not err in impliedly determining that appellant's sentences fall within constitutional limits. *See Randall*, 529 S.W.3d at 569; *Robertson*, 397 S.W.3d at 776. Nor did the trial court err in rejecting appellant's argument in his motion for new trial that his 48-year and 20-year sentences amount to cruel and unusual punishments that violate the Eighth Amendment. *See Randall*, 529 S.W.3d at 569; *Robertson*, 397 S.W.3d at 776. We overrule appellant's fifth issue.

**E.     Did the trial court abuse its discretion in imposing a sentence that was not supported by the record?**

In his fourth issue, appellant asserts that the trial court abused its discretion because it based its assessment of punishment on findings that are not supported by the record. In particular, appellant points to the trial judge's statement that "the Court further finds that [appellant] may be mentally ill, but there is no supporting evidence that at the time of these offenses that mental illness contributed to what the Court can only call horrific acts."

In cases in which the trial court assesses punishment, the trial court has wide latitude in setting the punishment. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). The task of setting a particular length of confinement is essentially a normative judgment. *Parker v. State*, 462 S.W.3d 559, 566 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A trial court assessing punishment holds essentially unfettered discretion to impose any punishment within the prescribed range subject to a limited Eighth-Amendment gross-disproportionality review. *Id.* Punishment that falls within the legislatively prescribed range, based upon the trial court's informed normative judgment, and in accordance with due process of law is not subject to a sufficiency-of-the-evidence review on appeal. *See id.*

Appellant cites an unpublished case from one of our sister courts as standing for the proposition that a trial court abuses its discretion when there is no evidence or factual basis for the sentence imposed. Appellant argues by analogy that a trial court abuses its discretion when the factual basis it gives to support the sentence is not supported by the record. First, the unpublished opinion from our sister court has no precedential value and is neither binding nor persuasive authority. *See* Tex. R. App. P. 47.7 & 2008 cmt.; *Campbell v. State*, 426 S.W.3d 780, 783 n.2 (Tex. Crim. App. 2014); *Gonzales v. State*, 474 S.W.3d 345, 350 (Tex. App.–Houston [14th Dist.] 2015, pet. ref'd). Second, even if the case were published and the case conflicted with this court's precedent in *Parker*, we would be bound to follow our own precedent. *See Caddell v. State*, 123 S.W.3d 722, 726–27 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

Appellant was convicted of two charges of aggravated assault with a deadly weapon and one charge of attempted capital murder. Aggravated assault is a second-degree felony. Tex. Penal Code § 22.02(b) (West 2018). The range of punishment for a second-degree felony is two to twenty years' confinement. Tex. Penal Code § 12.33(a) (West 2018). In addition to being sentenced to imprisonment, an individual adjudged guilty of a second-degree felony may be punished by a fine not to exceed $10,000. Tex. Penal Code § 12.33(b) (West 2018). The trial court assessed punishment at twenty years' confinement for each of the two aggravated-assault offenses. These punishments fall within the statutory range of punishment for a second-degree felony.

Capital murder is a capital felony. Tex. Penal Code § 19.03(b) (West 2018). Attempted capital murder is a first-degree felony. *See* Tex. Penal Code §§ 15.01 & 12.04 (West 2018). The punishment range for a first-degree felony is confinement for life or five to ninety-nine years' confinement. *See* Tex. Penal Code § 12.32

(West 2018). In addition to receiving a sentence of imprisonment, an individual adjudged guilty of a first-degree felony may be punished by a fine not to exceed $10,000. *Id.* The trial court assessed punishment at 48 years' confinement for the attempted-capital-murder offense. This punishment falls within the statutory range for attempted capital murder. The trial court ordered each of these sentences to run concurrently.

The State presented evidence that appellant perpetrated random acts of violence against innocent people who happened to be in close proximity to appellant. The State presented evidence that appellant had written a document in which he evinced an intent to kill people.

Appellant presented evidence from several witnesses who testified that appellant was a valuable and involved member of the community and an excellent student. These witnesses were shocked that appellant was responsible for violent crimes. The psychologist at the Harris County Jail testified that appellant was admitted into her cognitive behavior therapy program. The psychologist testified that appellant was an unusual person to come through her program and she did not believe appellant would be a good candidate for prison because he did not have the social skills he would need in prison. Dr. Faubion testified that he is the clinic director of Kerrville State Hospital and the chairperson for the State Forensic Services Committee that coordinates mental health services across the state system. Dr. Faubion serves on the "dangerous-review board" which reviews cases of individuals in the system. Dr. Faubion testified that appellant suffered from OCD and anxiety disorder. Dr. Faubion testified that appellant was a good candidate for rehabilitation and that treatment would diminish any type of violence by appellant in the future. According to Dr. Faubion, appellant had suffered intrusive thoughts for years, but those thoughts had not properly been treated with medication. When

asked if he could testify that appellant's actions were in response to or because of OCD, Dr. Faubion answered, "No."

Based on the record, the evidence supports a finding that no credible evidence showed appellant's mental illness caused appellant's actions. The trial court imposed a midrange sentence for attempted capital murder and the maximum amount of confinement for aggravated assault. While appellant presented significant mitigating evidence, the State presented evidence showing the horrific nature and lasting consequences of appellant's crimes. Appellant attempted to kill people at random and well might have killed many people but for the intervention of emergency responders who delivered lifesaving treatments and bystanders who subdued appellant until he could be taken into custody.

The trial court assessed punishments within the applicable statutory range for each offense. The record reflects that the trial court assessed these punishments based on its informed normative judgment. We already have rejected appellant's Eighth Amendment challenge, and appellant has not asserted any due-process violation. Under this court's precedent, we do not review the sufficiency of the evidence to support any of these punishments, and we conclude appellant has shown no error in the trial court's assessment of any of these punishments. *See Parker*, 462 S.W.3d at 566. Accordingly, we overrule appellant's fourth issue.

## III.  CONCLUSION

Appellant is not entitled to a new trial under Texas Rule of Appellate Procedure 34.6. The trial court did not abuse its discretion in denying appellant's motion for new trial. The trial court assessed punishments within the applicable statutory range for each offense. The record reflects that the trial court assessed these punishments based on its informed normative judgment. Appellant's Eighth Amendment challenges lack merit, and appellant has not asserted any due-process

violation. Under this court's precedent, we do not review the sufficiency of the evidence to support the trial court's assessment of punishment as to any of these offenses, and we conclude appellant has shown no error in the trial court's assessment of any of these punishments.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Busby and Wise.
Publish — TEX. R. APP. P. 47.2(b).