**Affirmed and Memorandum Opinion filed May 23, 2024.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-22-00809-CR

**KEVIN LEE ZELLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 21-CR-0476**

## MEMORANDUM OPINION

Appellant Kevin Lee Zeller appeals his conviction for assault of a family member with a prior family-violence conviction, a third-degree felony. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A).[1] In four issues, Zeller contends (1) the trial court erred in admitting evidence of his 2018 misdemeanor conviction for assault-

---

[1] Texas Penal Code § 22.01(b)(2)(A) was amended effective September 1, 2023. *See* Act of May 24, 2023, 88th Leg., R.S., ch. 694, § 1. The citations in this opinion refer to the prior version of the statute, which is applicable to Zeller due to the date of this offense.

family violence, which elevates the degree of this offense to a third-degree felony, in the guilt phase of trial; (2) a 2019 felony conviction should not have been used for enhancement because it was not final before the 2018 misdemeanor conviction; and (3)–(4) his sixty-year sentence is excessive in violation of the Eighth Amendment of the United States Constitution and article I, § 13 of the Texas Constitution. We affirm.

## I.   BACKGROUND

Zeller dated Kathy, the complainant, in a two-and-a-half-year relationship that friends described as rocky. The relationship ended on February 16, 2021, the night of a winter freeze, when Kathy awoke to Zeller hitting her in the face and head. The two were staying in Zeller's garage apartment in Texas City, Texas, and Zeller spent the day helping his boss prepare for the anticipated ice storm. When Zeller later left to help his boss with some burst pipes, Kathy took a nap on the sofa. After he returned, Zeller punched Kathy in the face so many times that she thought she passed out. Zeller believed at the time that she had been exchanging text messages with another man. Over a period of hours, Zeller then refused to allow Kathy to move about or leave the garage apartment. At one point Kathy was crying and begging for water or ice because the blood in her mouth was drying up. Zeller chewed some ice and spit it in her face. Kathy was badly beaten, with two black eyes, extensive bruising around her forehead, cheek, mouth, ear, and eye orbit, and a bloodied nose and mouth. Her right eye was swollen shut.

Zeller took Kathy's cell phone from her, but when he fell asleep, she was able to slip it out of his pocket. Around 3:00 a.m., she texted a friend's boyfriend for help and sent a picture of her battered face. The friend called the police and stayed in contact with the officers after they arrived at Zeller's garage apartment.

When the police knocked on the door, no one responded. Through a hole in

2

the wooden façade of the garage, the police could see Zeller standing inside and could hear two people talking. While refusing to open the door to the garage, Zeller denied that Kathy was in the garage apartment and subsequently denied that he and Kathy had been fighting. After more than fifteen minutes of asking to enter to check on Kathy, and for Zeller to come outside, the police started to force entry into the garage. Zeller finally opened the garage door but immediately ran further into the garage apartment and then resisted arrest. The police found Kathy inside, crying.

Zeller was charged with assault-family violence with a prior conviction in May 2018 for assault-family violence ("2018 misdemeanor conviction"). The State also alleged in two enhancement paragraphs that Zeller had been convicted of two previous felonies—in December 2005 for burglary of a habitation and in July 2019 for assault-family violence, second offense ("2019 felony conviction"). In the 2018 misdemeanor conviction and 2019 felony conviction cases, Kathy had been the victim.

Trial commenced on September 27, 2022. The jury found Zeller guilty of assault-family violence with a previous conviction as charged in the indictment. Zeller then pleaded true to the two enhancement paragraphs of the indictment, and the jury assessed punishment at sixty years' imprisonment and a $10,000.00 fine. At sentencing, the State abandoned the fine because the habitual offender statute does not provide for one. The trial court thus sentenced Zeller to sixty years' imprisonment. This appeal followed.

## II.    PRIOR CONVICTION FOR FAMILY VIOLENCE

In his first issue, Zeller argues the trial court erred in allowing evidence of his 2018 misdemeanor conviction during the guilt-innocence phase of trial. The State responds that Zeller has not preserved this issue for appeal because he did not

object to evidence of the 2018 misdemeanor conviction when it was admitted in evidence.

In the guilt-innocence phase of trial, the State offered State's Exhibit 17 into evidence as proof to elevate the current offense to a third-degree felony. *See id.* § 22.01(b)(2)(A); *Holoman v. State*, 620 S.W.3d 141, 142 (Tex. Crim. App. 2021) (concluding the aggravating factors set forth in this penal code subsection constitute alternative additional elements to establish a third-degree felony). State's Exhibit 17 is a certified copy of the judgment in Zeller's 2018 misdemeanor conviction, which includes a family violence finding. At trial, the State's witness, Patrick Ryan, testified as a fingerprint expert and verified that Zeller's thumbprint matched the thumbprint of the defendant in State's Exhibit 17. When the State offered State's Exhibit 17 into evidence, Zeller's trial counsel stated that she had "[n]o objection, your Honor."[2]

To preserve a challenge to the trial court's admission of evidence, the record must show that the party made a timely and specific objection on the record, unless the specific grounds are apparent from the context, and obtained an adverse ruling on that objection. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). Because there was no objection at trial, we conclude that Zeller has not preserved this issue for our review. *See* Tex. R. App. P. 33.1(a); *see also Balbisi v. State*, No. 14-19-00798-CR, 2021 WL 4472540, at *4 (Tex. App.—Houston [14th Dist.] Sept. 30, 2021, no pet.) (mem. op., not designated for publication) (concluding that lack of objection regarding evidence of multiple extraneous offenses waived the issue for appeal).

We overrule issue one.

---

[2] Similarly, at other times when the 2018 misdemeanor conviction was raised, such as *voir dire*, reading of the indictment to the jury, and opening statements, Zeller did not object.

## III. ENHANCEMENT

In his second issue, Zeller argues that if his 2018 misdemeanor conviction is an element of the current offense, then the evidence failed to show that his 2019 felony conviction became final before commission of the current offense, and it thus should not have been used to enhance his punishment to that of a habitual offender. *See* Tex. Penal Code Ann. § 12.42(d). The State responds that (1) Zeller cannot raise this issue on appeal because he pleaded true to the enhancements and stipulated to evidence of the previous felonies; (2) the date of the 2018 misdemeanor conviction is not an element of the current offense; and (3) the State proved the 2019 felony conviction was final before the date of the current offense.

Without the enhancement of his punishment, Zeller cannot be sentenced to more than ten years' imprisonment for his third-degree felony. *See id*. § 12.34; *Coleman v. State*, 631 S.W.3d 744, 755–56 (Tex. App.—Houston [14th Dist.] pet. ref'd). But under the habitual offender statute, if it is shown "that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final," then the punishment range for his third-degree felony is enhanced to a term of "life, or for any term of not more than 99 years or less than 25 years." *See* Tex. Penal Code Ann. § 12.42(d); *Coleman*, 631 S.W.3d at 755–56. At trial, the State sought to enhance Zeller's punishment through two enhancement paragraphs, including the 2019 felony conviction.

When a defendant pleads true to an enhancement paragraph, the State is relieved of the burden of proving the enhancements, and the defendant cannot complain on appeal that the evidence is insufficient to support the enhancements. *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981). The record shows that in the punishment stage of trial, the prosecutor read the two enhancement

paragraphs to the jury and Zeller pleaded "true" to them.

There is a narrow exception to this general rule—when the record "affirmatively reflects" that that the enhancement itself is improper. *Ex parte Rich*, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006); *Mikel v. State*, 167 S.W.3d 556, 559–60 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Zeller contends that his case fits within this narrow exception in an argument entailing four steps: (1) that his 2018 misdemeanor conviction, including its date, is an element of the current offense; (2) because the date of the 2018 misdemeanor conviction is an element of the current offense, 2018 operates as the date of the current offense if the State wishes to enhance punishment under the habitual offender statute; (3) any felony convictions alleged as enhancements under the habitual offender statute must have become final before 2018; and (4) the record affirmatively reflects that the 2019 felony conviction used as an enhancement occurred after 2018.

However, step one of Zeller's argument has been previously rejected in analogous cases. *See Reyes v. State*, 314 S.W.3d 74, 82 (Tex. App.—San Antonio 2010, no pet.); *Manning v. State*, 112 S.W.3d 740, 743 (Tex. App.—Houston [14th Dist.] 2003, pet ref'd). Like here, the court in *Reyes* addressed an appeal for assault-family violence in which the offense had been elevated to a third-degree felony due to a prior family violence conviction, and the defendant was eligible for enhanced punishment as a habitual offender due to two previous felony convictions. *Reyes*, 314 S.W.3d at 76, 81. In *Reyes*, the defendant contended that the date of his prior family violence conviction was an element of the assault for which he was charged. *Id.* at 80. The court in *Reyes* examined the assault statute and concluded that "[n]othing in the language of [Texas Penal Code § 22.01] suggests the date of the prior assault conviction must be proven; it must only be shown to have occurred prior to the present assault." *Id*. The court further

concluded "[a]lthough proof of a prior assault conviction is an element of the offense, the date on which the conviction occurred is not an element of the offense." *Id.* at 82. Similarly, this court has previously concluded that "appellant's position makes the date of the prior conviction an element of the current offense, when the State is only required to prove that at the time of the current offense the defendant had the status of having been previously convicted" of assault-family violence. *Manning*, 112 S.W.3d at 743. Based on *Manning* and *Reyes*, we agree that the date of the prior family-violence conviction is not an element of the current offense.

Moreover, the record shows Zeller committed this offense on February 16, 2021. The enhancement paragraphs of the indictment state that he was convicted of the previous two felonies on December 19, 2005, and July 22, 2019, respectively. Because he pleaded true to the enhancement paragraphs, Zeller may not complain of insufficient evidence proving the allegations contained in the enhancement paragraphs. *Manning*, 112 S.W.3d at 744.

Finally, we see nothing in the record that affirmatively reflects the enhancement was improper. *Mikel*, 167 S.W.3d at 559–60. In addition to his plea of true, Zeller signed a stipulation that listed his convictions for the two felonies used to enhance his punishment. Certified copies of the judgments for those two previous felonies were also admitted in evidence. Those judgments show final convictions of December 19, 2005, and July 22, 2019, before this offense occurred. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A).

We overrule issue two.

## IV.  CRUEL AND UNUSUAL PUNISHMENT

In his third and fourth issues, Zeller asserts his sixty-year sentence violates the prohibitions in the United States and Texas Constitutions against cruel and unusual punishment. U.S. CONST. amend. VIII; Tex. Const. art. I, § 13. Assault-family violence, second offense, is a third-degree felony, punishable by two to ten years' imprisonment. *See* Tex. Penal Code Ann. §§ 12.34(a); 22.01(b)(2)(A). Because Zeller's punishment was enhanced by two prior felony convictions, he was subject to imprisonment as a habitual offender for either life or any term of not more than ninety-nine years or less than twenty-five years. *See id*. § 12.42(d).

Most complaints, even constitutional errors, can be waived on appeal if not raised in the trial court. *Garza v. State*, 435 S.W.3d 258, 260–61 (Tex. Crim. App. 2014); *see also Compton v. State*, 666 S.W.3d 685, 713–14 (Tex. Crim. App. 2023) (concluding Eighth Amendment issue arising in *voir dire* was not preserved with a contemporaneous objection); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (holding defendant waived complaint concerning cruel and unusual punishment by not objecting at trial). A complaint that a sentence is grossly disproportionate and constitutes cruel and unusual punishment may be preserved by objecting at the punishment hearing or when the sentence is pronounced. *See Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013). An appellant may raise a sentencing issue for the first time in a motion for new trial only if he did not have an opportunity to object during the punishment hearing. *Burt*, 396 S.W.3d at 577 n.4.

In this case, Zeller did not object when the jury returned its decision after the punishment phase of trial or when the trial court pronounced his sentence, though he was not prevented from doing so. Zeller instead raised the issue for the first time in his motion for new trial. Because Zeller had the opportunity to timely

object to his sentence and did not, we conclude that he failed to preserve this issue for our review. *See* Tex. R. App. P. 33.1(a)(1); *Burt*, 396 S.W.3d at 577–78; *see also Nieves-Perez v. State*, No. 12-19-00389-CR, 2021 WL 1047209, at *3 (Tex. App.—Tyler Mar. 18, 2021, pet. ref'd) (mem. op., not designated for publication) (concluding that an appellant may complain about cruel and unusual punishment "for the first time in a motion for new trial only if he did not have an opportunity to object during the punishment hearing.").

Even if Zeller preserved these issues, we cannot conclude the trial court abused its discretion in denying his motion for new trial.[3] The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. This provision was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Meadoux v. State*, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010). Similarly, the Texas Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." Tex. Const. art. 1, § 13. The difference between the Eighth Amendment's "cruel and unusual" phrasing and the Texas Constitution's "cruel or unusual" phrasing is insignificant. *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997).

These provisions generally require punishment to be proportional to the crime committed. *Solem v. Helm*, 463 U.S. 277, 290 (1983); *Cantu v. State*, 939 S.W.2d at 645. The provisions do not require strict proportionality, however; they only prohibit extreme sentences that are "grossly disproportionate" to the crime. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016) (quoting *Ewing v.*

---

[3] Zeller's motion for new trial was overruled by operation of law. We review the denial of a motion for new trial for an abuse of discretion. *Quick v. State*, 557 S.W.3d 775, 788–89 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

*California*, 538 U.S. 11, 23 (2003) (plurality opinion)). *Solem* sets forth a three-part test to determine if a sentence is unconstitutional, 463 U.S. at 292, but the threshold determination is whether the sentence is disproportionate. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *Welch v. State*, 335 S.W.3d 376, 380 (Tex. App.—Houston [14th Dist.], pet ref'd). A punishment will be grossly disproportionate only in "exceedingly rare" or "extreme" cases. *Simpson*, 488 S.W.3d at 322–23.

Typically, a punishment within the prescribed statutory range of punishment for an offense is not grossly disproportionate, cruel, or unusual. *See Simpson*, 488 S.W.3d at 323. Moreover, courts that have addressed whether Texas's habitual offender statute rises to the level of being cruel and unusual punishment have concluded that it does not. *See, e.g.*, *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (addressing Texas's predecessor recidivist statute); *Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983) (same); *Moore v. State*, 54 S.W.3d 529, 541 (Tex. App.—Fort Worth 2001, pet. ref'd); *Price v. State*, 35 S.W.3d 136, 143–44 (Tex. App.—Waco 2000, pet. ref'd); *see also, e.g.*, *Sharpe v. State*, No. 07-21-00221-CR, 2022 WL 1668355, at *7 (Tex. App.—Amarillo 2022, no pet.) (mem. op., not designated for publication); *Nieves-Perez*, 2021 WL 1047209, at *4; *Randle v. State*, Nos. 05-20-00290-CR, 05-20-00292-CR, 2022 WL 99730, at *3, (Tex. App.—Dallas, Jan. 11, 2022, no pet.) (mem. op., not designated for publication);.

To determine whether a sentence for a term of years is grossly disproportionate, a court must judge the severity of the sentence in light of (1) the harm caused or threatened to the victims, (2) the culpability of the offender, and (3) the offender's prior adjudicated and unadjudicated offenses. *Quick,* 557 S.W.3d at 789. Here, the evidence at trial shows that Zeller assaulted Kathy while she was

asleep by punching her repeatedly in the head and face. He then locked Kathy and himself in the garage apartment and prevented her from leaving. Hours later, with drying blood around her mouth, she asked for water. In response, Zeller chewed up ice and spit it in her face. By around 3:00 a.m., she was able to get her cellphone to silently text a friend for help. After police arrived, they had to attempt a forced entry into the garage before Zeller would open the door. Zeller then ran and resisted arrest. Inside, Kathy was crying, her face badly beaten and bruised, with one of her eyes swollen completely shut and blood dried on her face. Her lip had been split and was bloody, and her teeth had been "messed up." Kathy's swollen eye continue to bleed for days, and she was in severe pain. Kathy testified that she was afraid and thought Zeller was going to kill her that night.

As to culpability and prior offenses, the record also shows that Zeller had nine prior criminal convictions and had committed offenses while addicted to drugs. Two of Zeller's prior convictions were for assaults against Kathy. In the punishment phase of trial, Zeller denied that he was guilty of the 2018 misdemeanor assault against Kathy, claiming he only pleaded guilty because he wanted to go home. He blamed Kathy for much of their tumultuous relationship and physical violence, saying she would initiate punching or striking him when he argued with her. In contrast, Kathy and her friend both testified at trial that Zeller had been physically abusive to Kathy on other occasions. On one occasion, the friend had also been pushed by Zeller "out of the way, so he could lock [Kathy] into the garage." In his testimony, Zeller denied restraining Kathy inside the garage apartment on the night of the offense. However, the police body camera video showed that Zeller said that Kathy was not in the garage, stonewalled police for over fifteen minutes after they knocked and asked him to open the door and come outside, and refused to open the door even he after he admitted Kathy was there

11

and police demanded to "make sure she's fine," "let me check on her, come on, man," and "I need to see that she's fine." Further, when Zeller was resisting arrest, he can be heard on the body camera video crying out, "You did this to me, Kathy."

Considering the nature of Zeller's actions, the degree of harm he caused, his culpability, and his prior offenses, Zeller's sixty-year sentence is not grossly disproportionate and falls within the limits of the habitual offender statute. *See* Tex. Penal Code Ann. § 12.42(d); *see also Holley v. State*, 167 S.W.3d 546, 549–50 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (punishment within the statutory guidelines is not excessive). We conclude that the trial court did not abuse its discretion in overruling Zeller's motion for new trial. We overrule issues three and four.

## V.     CONCLUSION

Having overruled Zeller's four issues, we affirm the trial court's judgment.

/s/     Margaret "Meg" Poissant
Justice

Panel consists of Justices Hassan, Poissant, and Wilson.

Do Not Publish — TEX. R. APP. P. 47.2(b).