

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00257-CR
No. 02-24-00258-CR
No. 02-24-00259-CR
No. 02-24-00260-CR
No. 02-24-00261-CR
No. 02-24-00262-CR
No. 02-24-00263-CR
No. 02-24-00264-CR
No. 02-24-00265-CR

_____

DONAVIN LT COPELAND, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court Nos. 1763446, 1763663, 1763976, 1764172, 1764265, 1764266, 1764269, 1764934, 1812677

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

Appellant Donavin LT Copeland pled guilty to, among other offenses, multiple aggravated robberies, and the trial court sentenced him to sixty years' confinement for each aggravated robbery offense, with the sentences to run concurrently.[1] *See* Tex. Penal Code Ann. § 29.03; *see also id.* §§ 3.01, 3.03 (requiring sentences for multiple offenses to run concurrently when the offenses are prosecuted in a single criminal action and arose out of the same criminal episode and defining "criminal episode" to include the repeated commission of the same offense).

One of the aggravated robbery complainants was a convenience store employee who had brought her dog with her to work. Copeland, holding a firearm, approached the employee behind the register counter, shot her dog, and then demanded money from the register. *See id.* § 29.03(a)(2) (providing that a person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon). Copeland was charged with (and pled guilty to) cruelty to an animal, *see id.* § 42.092, and the trial court ordered the animal-cruelty sentence to run consecutively to the aggravated robbery sentences.

In two points, Copeland argues that (1) the trial court should not have ordered the sentence for the animal-cruelty conviction to run consecutively to the aggravated robbery sentences because the animal-cruelty offense occurred in the same criminal

---

[1]Copeland also pled true to a repeat-offender enhancement allegation that he had previously been convicted of the felony offense of obstruction or retaliation.

episode as the robberies and (2) the sixty-year sentences for the aggravated robbery offenses constitute cruel and unusual punishment. Because the aggravated robbery sentences were not excessive but the animal-cruelty sentence must run concurrently with the robbery sentences, we will reform the judgments and affirm as modified.

## Background

### I. Assault Against Copeland's Girlfriend

In the first of a string of violent offenses committed in less than two months, Copeland assaulted his then-girlfriend on November 17, 2022. Copeland was with his girlfriend at a hotel when he decided to look through her phone. He "didn't like what he saw in it," so he broke her phone and "started hitting [her and] slapping [her]." He also bit her. The assault caused bleeding in her eye and nose and bruising on her eye and neck. He then took her car without her permission and left her at the hotel.

### II. The First Aggravated Robbery

About three weeks later, Copeland robbed a cashier at a gas station in Saginaw. Copeland went into the store and told the cashier, Sagar Poudyal, that the ATM was not working. After Poudyal was unable to resolve the issue, Copeland put a drink on the counter and attempted to pay for the drink with a card. The transaction did not go through, but Poudyal told Copeland he could have the drink anyway. Copeland then asked to use the restroom, and when he came back, he took out a gun and fired it in Poudyal's direction. After Poudyal gave him money from the cash register drawer,

4

Copeland asked for Poudyal's car key. Poudyal gave him the key, and Copeland left, but he went back into the store and forced Poudyal to go release the car's hand brake.

## III. The Second Aggravated Robbery

About three weeks after the first aggravated robbery, Copeland and another man robbed an employee at a Fort Worth game room. One of the men pistol-whipped a patron. The other man waved a knife in the game-room employee's face.[2] The robbers took money from the register and the game-room employee's car, where she had left her wallet.

## IV. The Third Aggravated Robbery and the Animal-Cruelty Offense

Five days later, Copeland robbed Jacki Anderson, an employee of the Sunny Mart convenience store in Fort Worth. Her dog was at the store with her. At the sentencing hearing, the trial court admitted security camera footage of the robbery; we discuss that video in analyzing Copeland's first point.

In Anderson's testimony about the events, she said that Copeland walked in and asked if he could play on some game-room machines in the store. After Anderson said yes, she turned her attention to her phone. "[A]ll of a sudden, [she] heard a loud bang[,]" and when she looked up, she saw her dog "seizing on the floor and [Copeland] running toward [her] with a gun pointed at [her]." Copeland told her "to

---

[2]The game-room employee did not specify in her testimony which man was Copeland. We do not have a record of the plea proceeding at which Copeland pled guilty to the offense, but the judgment in that case contains a deadly-weapon finding and states that the weapon was a firearm.

give him the money or he was going to shoot [her]." Anderson gave him the money from the register and a zipper bag of money. He also took her pistol and her truck keys from her purse. Copeland left in Anderson's truck. The dog died from the injury.

Copeland was charged with aggravated robbery and cruelty to an animal.

**V. The Fourth, Fifth, and Sixth Aggravated Robberies**

Two weeks after those offenses, Anna Gadberry and another woman were at a Valero playing games. Copeland opened the door, put his gun in the air, and "shot the gun off" about nine inches from where the clerk was standing. Copeland first went behind the counter to the clerk and then approached Gadberry and the other woman and asked for their purses. Copeland also demanded Gadberry's car keys. Copeland left in her vehicle. Copeland was charged with aggravated robbery of the store clerk, Gadberry, and the other customer.

**VI. Evading Arrest, Possession, and Other Offenses**

Copeland also committed and pled guilty to two other offenses from which he has appealed: evading arrest on December 7 (the same day on which he robbed Poudyal) and possession of a controlled substance three days after the Valero robberies. Although Copeland has appealed from these additional convictions, his brief does not challenge his conviction or sentence for either offense. Copeland also committed credit card or debit card abuse and unauthorized use of a motor vehicle, but he has not appealed those convictions or his conviction for the assault against his

6

former girlfriend. Other than the assault against his former girlfriend, no details were provided at the punishment hearing about these other offenses.[3]

## VII. Copeland's History of Violence

Evidence was also presented at the punishment hearing about Copeland's criminal history. Copeland had been arrested at least ten times as a juvenile. In one offense, Copeland and his friends robbed a woman in a Walmart parking lot. He also had previous arrests for breaking into cars and assaulting some of his teachers. He was placed in the Texas Juvenile Justice Department for two years for assaulting a co-defendant who had cooperated against him.

Several of Copeland's former teachers testified. Copeland's fifth grade teacher testified that although it had been about ten years since she had taught him, she still remembered him because he was the only student who ever hit her. More specifically, he once punched her in the face. Another time, he bit her, "[a]nd it was a little difficult to get him to turn loose."

Another teacher, who taught Copeland when he was in the eighth grade, testified about two times that he had assaulted her. The teacher taught in the behavior unit, which included students who have documented behavioral issues. The first time Copeland assaulted her, he punched her in the jaw after she tried to take back some

---

[3]His former girlfriend testified about his taking her car without her permission after assaulting her, but the record does not make clear whether this was the unauthorized use of a vehicle that led to the conviction.

Chapstick that he had taken from her. Another time, Copeland made a statement that she interpreted as a threat to assault her or one of the two classroom paraprofessionals the next day. The next day, Copeland tried to leave the classroom, and the teacher and the two paraprofessionals stood in front of the door to block him. Copeland hit and kicked each of them; one of the paraprofessionals was a 65-year-old woman.

A former assistant principal at Copeland's high school also testified that Copeland had been "difficult to manage and cope with from a disciplinary standpoint." The principal stated that Copeland "didn't take direction from anyone -- anyone, especially adults. He had a quick temper, so if anything did not go his way, he would lash out. Even something as simple as looking at him incorrectly would set him off." Copeland was removed from the school after he "got a hold of" an explicit video of a female student and posted it on his Snapchat account.

The trial court also admitted evidence of Copeland's disciplinary issues in the Tarrant County jail since his arrest. These issues included multiple instances of making threats against officers and physical fights with other inmates.

## VIII. Copeland's Sentencing

At the conclusion of the hearing, the trial court sentenced Copeland to one year's confinement for the assault; two years' confinement for the unauthorized use of a vehicle offense, ten years' confinement each on the evading arrest and possession offenses, sixty years' confinement for each aggravated robbery offense, and ten years'

confinement for the animal-cruelty offense. The trial court ordered the animal-cruelty sentence to run consecutively to the other sentences. Specifically, all nine judgments contain the following cumulation order: "Case number 1764934 [the animal-cruelty case] to be served consecutively with [all the other cause numbers]." [Capitalization altered.]

## Discussion

## I. Copeland's Challenge to Consecutive Sentences

In Copeland's first point, he argues that the trial court abused its discretion in ordering the animal-cruelty sentence to run consecutively to the aggravated robbery sentences.

### A. Sentencing Law and Standard of Review

We review for an abuse of discretion a trial court's decision to order multiple sentences to run consecutively or concurrently. *Byrd v. State*, 499 S.W.3d 443, 446–47 (Tex. Crim. App. 2016); *see* Tex. Code Crim. Proc. Ann. art. 42.08 (providing trial court with discretion to order that punishments run cumulatively or concurrently). However, that discretion is limited by Texas Penal Code Section 3.03. Tex. Penal Code Ann. § 3.03. Under Section 3.03, with limited exceptions not applicable here, when a defendant has been found guilty of more than one offense "arising out of the same criminal episode prosecuted in a single criminal action," the sentences for those offenses "shall run concurrently." *Id.* For purposes of Section 3.03, the term "criminal episode" means

9

the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:

(1) the offenses are committed *pursuant to the same transaction* or *pursuant to two or more transactions that are connected* or constitute a common scheme or plan; or

(2) the offenses are the repeated commission of the same or similar offenses.

*Id.* § 3.01 (emphasis added).

A trial court abuses its discretion if it imposes consecutive sentences where the law requires the sentences to run concurrently. *Rosalez v. State*, Nos. 13-21-00164-CR, 13-21-00165-CR, 2022 WL 3654753, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2022, pet. ref'd) (mem. op., not designated for publication); *see* Tex. Penal Code Ann. § 3.03. When a trial court improperly orders sentences to run consecutively, the remedy is to reform the trial court's judgment. *Campuzano v. State*, Nos. 01-13-00990-CR, 01-13-00991-CR, 2015 WL 1468304, at *8 (Tex. App.— Houston [1st Dist.] Mar. 26, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *Robbins v. State*, 914 S.W.2d 582, 584 (Tex. Crim. App. 1996)).

**B. Analysis**

Neither party disputes that the aggravated robbery and animal-cruelty offenses were prosecuted in a single criminal action. *See Robbins*, 914 S.W.2d at 583–84 (stating that offenses were prosecuted in the same criminal action when the trial court conducted one consolidated punishment hearing). Copeland argues that the animal-

10

cruelty offense was committed in the same criminal episode as the robbery of Anderson and thus the sentences for the two offenses could not be stacked. He further argues that there was "a similar pattern between the commission of all the aggravated robbery offenses within these proceedings," and thus all the aggravated robbery offenses were part of the same criminal episode, and the animal-cruelty sentence could not be stacked with any of the other aggravated robbery sentences.

The State points out that the evidence reflects Copeland's history of "unprovoked, spontaneous acts of violence." Further, although Copeland's shooting the dog preceded the completion of his aggravated robbery of Anderson, the State correctly notes that Anderson's testimony provided no motive for Copeland's shooting the dog. She included little information about the dog's location when it was shot and no information about what the dog was doing at the time or its interactions, if any, with Copeland. Thus, from Anderson's description of the events, Copeland's shooting the dog could have seemed like a random act of cruelty. Based on her testimony and the evidence of Copeland's history of violence, the State argues that the trial court could have reasonably concluded that Copeland's "senseless act of animal cruelty was unrelated and unconnected to his subsequent act of aggravated robbery."

However, the trial court also admitted security camera video that captured the offenses, and although not discussed in either party's brief, that video provided a fuller picture of the relationship between the two offenses. In the video, Anderson

11

and her dog were sitting behind the counter at the cash-wrap area[4] housing the cash register. Anderson was facing the counter, and her dog was sitting to her left. Copeland approached the area behind the counter, brandishing a gun. As he did so, the dog jumped up and ran toward Copeland, barking and forcing Copeland to move backward out of the area. At that point, Copeland shot the dog. He then immediately proceeded back into the area behind the counter where, according to Anderson, he told her to "give him the money or he was going to shoot [her]."

Unlike Anderson's testimony, the video made clear that the animal-cruelty offense and the aggravated robbery of Anderson were "committed pursuant to the same transaction or pursuant to two or more transactions that are connected." *See* Tex. Penal Code Ann. § 3.01; *Crunk v. State*, No. 13-07-00712-CR, 2009 WL 2973474, at *9 (Tex. App.—Corpus Christi–Edinburg Sept. 17, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that when defendant killed victim and "almost immediately" placed the body in a nearby goose pen, moving it again "[o]nly hours later" to a more remote location, the murder and tampering offenses "were committed pursuant to the same transaction or pursuant to two or more transactions that are connected"); *Hyder v. State*, Nos. 05-98-01721-CR, 05-98-01781-CR,

---

[4]The retail industry uses the term "cash-wrap" to refer to a store's front counter or check-out areas. *See ABQ Uptown, LLC v. Davide Enters., LLC*, No. CV 13-0416 JB/KK, 2015 WL 8364799, at *5 (D.N.M. Oct. 19, 2015)); *see also Flip Flop Shops Franchise Co., LLC v. Neb*, No. CV 16-7259-JFW (Ex), 2016 WL 9275403, at *2 n.3 (C.D. Cal. Dec. 5, 2016, order) (defining "cash wrap" as "the main point of sale or checkout area").

2000 WL 688258, at *2 (Tex. App.—Dallas May 24, 2000, pet. ref'd) (not designated for publication) (holding that robberies and assaults arose out of same criminal episode as defined in Section 3.01 when they occurred as part of continuous and unbroken chain of events); *Kimble v. State*, No. B14-88-00932-CR, 1990 WL 8516, at *2 (Tex. App.—Houston [14th Dist.] Feb. 1, 1990, no pet.) (not designated for publication) (noting that appellant, a hotel employee, had committed sexual assault against a hotel patron and had taken money from the room as he left and holding that because Section 3.01 authorizes joinder of multiple offenses committed pursuant to the same transaction, appellant was properly charged with both offenses in the same indictment); *cf. Delacruz v. State*, Nos. 02-13-00048-CR, 02-13-00049-CR, 2014 WL 1389543, at *6 n.10 (Tex. App.—Fort Worth Apr. 10, 2014, pet. ref'd) (per curiam) (mem. op., not designated for publication) (noting that defendant's attempted theft and his hitting a store employee with a car while attempting to escape were part of the same criminal episode, and thus for purposes of aggravated robbery charge, his hitting the employee with his car was in the course of committing theft).

The two offenses were part of the same criminal episode. Additionally, because the aggravated robberies were all "the repeated commission of the same . . . offense[,]" they also had to run concurrently with each other. *See* Tex. Penal Code. Ann. §§ 3.01, 3.03. Accordingly, Section 3.03 requires the animal-cruelty sentence to run concurrently with the aggravated robbery sentences. *See id.* § 3.03. We sustain Copeland's first point.

## II. Copeland's Challenge to Sixty-Year Sentences

In Copeland's second point, he argues that the trial court violated his rights under the Eighth Amendment of the United States Constitution and the Texas Constitution[5] by assessing sixty years' confinement for the aggravated robberies as a cruel and unusual punishment. He contends that the history of his neurological issues that began as a young child and persist to the present established that the sixty-year sentences are grossly disproportionate to the offenses. In response, the State asserts that the sixty-year sentences did not constitute cruel and unusual punishment given (1) the harm that Copeland caused and threatened to cause to the victims and to society, (2) his admitted criminal culpability, and (3) his prior adjudicated and unadjudicated crimes. The State further asserts that the sentences are commensurate with other sentences upheld by Texas reviewing courts for similar offenses.

---

[5]Copeland did not object to the sentences based on the Texas Constitution. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding that complaint about excessive punishment under Texas Constitution forfeited by not objecting on that basis in trial court). Further, on appeal, he does not argue that the Texas Constitution offers greater protection than the United States Constitution, and Texas courts have held that "if the punishment assessed is within the range of punishment established by the Legislature under its constitutional authority, there is no violation of the state constitutional provisions against cruel and unusual punishment." *See Baldridge v. State*, 77 S.W.3d 890, 893 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *see also Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972); *Jarrett v. State*, 647 S.W.2d 409, 413 (Tex. App.—Fort Worth 1983, no pet.). We overrule the part of his second point that is based on the Texas Constitution.

**A. Evaluating a Sentence for Gross Disproportionality**

The United States Constitution's ban on cruel and unusual punishment includes a requirement that punishment be proportionate to the offense. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). Thus, a punishment is excessive, and therefore cruel and unusual, when it is grossly disproportionate to the offense. *Id.* Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual. *Id.* at 323. Indeed, "[s]ubject only to a very limited[ ]. . . gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (footnote omitted).

To evaluate whether a sentence for confinement for a term of years is grossly disproportionate to the offense, we first compare the gravity of the offense and severity of the sentence. *Graham v. Florida*, 560 U.S. 48, 60, 130 S. Ct. 2011, 2022 (2010). In that analysis, we consider the harm caused or threatened to the victim, the offender's culpability, and the offender's criminal history, including prior adjudicated and unadjudicated offenses. *Simpson*, 488 S.W.3d at 323 (citing *Graham*). "In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences

15

imposed for the same crime in other jurisdictions." *Id.*; *see Reyes v. State*, 557 S.W.3d 624, 635 (Tex. App.—El Paso 2017, pet. ref'd).

**B. Analysis**

In evaluating Copeland's culpability, we consider factors such as his "age at the time of the offense, his motive and intent to commit the crime, his role as the primary actor or as a party to the offense, and his acceptance of responsibility." *Bolar v. State*, 625 S.W.3d 659, 666 (Tex. App.—Fort Worth 2021, no pet.); *see also Bayoh v. State*, No. 05-23-01254-CR, 2025 WL 88162, at *4 (Tex. App.—Dallas Jan. 14, 2025, no pet.) (mem. op., not designated for publication). Copeland pled guilty, which shows some acceptance of responsibility for his actions. On the other hand, one of the offenses for which he was being sentenced was evading arrest or detention, an offense that reflects an intent to evade responsibility. *See Bolar*, 625 S.W.3d at 667. Copeland was eighteen when he committed the offenses. Thus, he was an adult for each offense, but still young. However, the robberies were all the product of his intentional or knowing conduct. Except for the robbery of the game room, Copeland acted alone for each offense. And in the game room robbery, he was an active participant. Further, during the three convenience-store robberies, Copeland discharged his weapon.

As evidence against his culpability, Copeland's mother testified that he has ADHD, bipolar disorder with schizophrenic tendencies, and oppositional defiant disorder. She stated that he had been in counseling to help him deal with "what triggers him" and "how to mentally deal with making the right choices when those

16

triggers happen," but that bipolar disorder is hard for a child to deal with. She explained that when Copeland was a child, he did not get proper treatment because she could only keep him in a mental facility for thirty days as a parent. She asserted that the judge in one of his juvenile cases "was supposed to send him to the mental hospital . . . because that's . . . the only way a child could have a longer stay," but instead the judge "decided to send him to juvenile." She stated that Copeland "still hasn't got his mental stuff situated" because "we just never got help from the system." She asked the trial court to consider Copeland's history of mental illness in sentencing.

However, no expert testified that Copeland's conditions caused him to commit the robberies, and no expert testified about how his conditions manifested or how his behavior was connected to his conditions. *See Quick v. State*, 557 S.W.3d 775, 789 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). Further, although his mother testified that Copeland felt remorseful, there was no testimony or evidence that, when he committed the offenses, he did not understand or was not capable of understanding that his actions were wrong. *See id.* The evidence of Copeland's mental health issues does not negate his culpability for the offenses.

The trial court also heard evidence that Copeland had an extensive history of criminal behavior as a juvenile, including violence against his teachers and staff at his school. That behavior included a prior robbery, his assaulting a sixty-five-year-old classroom paraprofessional, and his punching two different teachers in the face, one

for simply trying to retrieve her lip balm from him. This criminal history points to Copeland's being a danger to others.

As for harm, five of the robbery complainants testified about how they had been negatively affected by Copeland's robbing them:

- Poudyal testified that it had been over a year-and-a-half since the robbery, but he still was too afraid to go inside a gas station and is afraid of crowded places. He cannot be around fireworks because they make him feel "like maybe someone . . . might be shooting" at him.

- The game-room employee stated that Copeland and his accomplice took her wallet, which contained pictures of her late husband—pictures that she cannot replace. During the robbery, she was worried that she was going to be killed, and she still has periods of anxiety and depression.

- Anderson testified that she quit her job the same day as the robbery and has had trouble working elsewhere since then because she cannot bear to go anywhere alone. She has trouble sleeping due to nightmares.

- Gadberry testified that she feared for her life during the robbery and that she had never before felt that frightened. She continued to be scared after the robbery because "everywhere [she] went, she thought she saw [Copeland]." As of the time of trial, she still felt scared in the evening, so she "just [didn't] go out at night." She thinks about the robbery every day.

- The convenience store worker who was robbed in the same episode as Gadberry testified that she tries not to leave the house anymore. Like Gadberry, she was frightened for her life during the robbery. She was no longer working at the convenience store where she had been robbed and no longer wants to work in that kind of environment. But she had worked at convenience stores for twenty-six years, and she has not been able to find work outside of convenience stores. As a result, the robbery "pretty much ruined [her] life."

In summary, Copeland's actions have continued to have serious effects on the people he robbed.

18

Considering the relevant factors, we conclude that the gravity of his offenses was significant. Having so concluded, we next observe that the aggravated robbery sentences were well within the statutory range. *See* Tex. Penal Code Ann. §§ 12.32 (setting confinement range at "life or for any term of not more than 99 years or less than 5 years" for first-degree felony), 12.42 (setting confinement range at "life, or for any term of not more than 99 years or less than 15 years" for a first-degree felony if defendant has previously been convicted of a felony), 29.03 (making aggravated robbery a first-degree felony). The sentences were on the higher side of the range but still far less than the maximum. *See id.* § 12.42; *Cox v. State*, No. 05-23-00194-CR, 2024 WL 1459878, at *1 (Tex. App.—Dallas Apr. 4, 2024, pet. ref'd) (mem. op., not designated for publication) (noting defendant received sixty-year sentence for aggravated robbery); *Carreon v. State*, No. 02-23-00129-CR, 2024 WL 482438, at *2 (Tex. App.—Fort Worth Feb. 8, 2024, pet. ref'd) (mem. op., not designated for publication) (same). Given the gravity of the offenses and the punishment range, we cannot say that the sentences raise an inference of gross disproportionality.

Because of our holding on the first step of our analysis, it is not necessary for us to compare the sentences with sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions. *See Simpson*, 488 S.W.3d at 323 (citing *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022); *Hammer*

*v. State*, 461 S.W.3d 301, 304 (Tex. App.—Fort Worth 2015, no pet.). We overrule

Copeland's second point.

## Conclusion

Having sustained Copeland's first point and overruled his second, we modify

the trial court's judgments to order that the animal-cruelty sentence run concurrently

with the aggravated robbery sentences. Specifically, we modify the cumulation order

in all nine judgments to state: "Case number 1764934 to be served consecutively with

case numbers 1763663, 1763837, 1791707, and 1763446."[6] We also modify the

concurrent-sentencing portion of each aggravated robbery judgment to insert

"1764934" in the list of case numbers to be served concurrently.[7] Finally, we modify

---

[6]These four cases are the two convictions not appealed and the possession and evading arrest offenses. Copeland has not challenged this part of the cumulation order or any other part of the judgments in the cases on appeal except for the inclusion of the language ordering the animal-cruelty sentence to run consecutively to the aggravated robbery sentences.

[7]Thus, the judgment in case number 1763976 is modified to state: "Case 1763976 to be served concurrently with case numbers 1764934, 1763663, 1763837, 1763446, 1764172, 1764265, 1764266, 1764269, 1791707, 1812677."

The judgment in case number 1764172 is modified to state: "Case 1764172 to be served concurrently with case numbers 1764934, 1763663, 1763837, 1763976, 1763446, 1764265, 1764266, 1764269, 1791707, 1812677."

The judgment in case number 1764265 is modified to state: "Case 1764265 to be served concurrently with case numbers 1764934, 1763663, 1763837, 1763976, 1764172, 1763446, 1764266, 1764269, 1791707, 1812677."

the animal-cruelty judgment to add this order: "Case number 1764934 to be served concurrently with case numbers 1763976, 1764172, 1764265, 1764266, 1764269, 1812677." We affirm the judgments as modified.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 31, 2025

---

The judgment in case number 1764266 is modified to state: "Case 1764266 to be served concurrently with case numbers 1764934, 1763663, 1763837, 1763976, 1764172, 1764265, 1763446, 1764269, 1791707, 1812677."

The judgment in case number 1764269 is modified to state: "Case 1764269 to be served concurrently with case numbers 1764934, 1763663, 1763837, 1763976, 1764172, 1764265, 1764266, 1763446, 1791707, 1812677."

The judgment in case number 1812677 is modified to state: "Case 1812677 to be served concurrently with case numbers 1764934, 1763663, 1763837, 1763976, 1764172, 1764265, 1764266, 1764269, 1791707, 1763446."